THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID M. TAMER,

                Plaintiff,                            Civil Action No.
                                                  13-CV-13011

vs.

                                                    HON. MARK A. GOLDSMITH

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

## OPINION AND ORDER (1) ACCEPTING THE RECOMMENDATION CONTAINED IN THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION DATED MAY 27, 2014 (DKT. 18), (2) OVERRULING PLAINTIFF'S OBJECTIONS TO THE REPORT AND RECOMMENDATION (DKT. 19), (3) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DKT. 13), and (4) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. 15)

## I.      INTRODUCTION AND BACKGROUND

      This is a social security case.  Plaintiff David M. Tamer appeals from the final determination of the Commissioner of Social Security denying his application for disability benefits under the Social Security Act, 42 U.S.C. § 1381(a), et seq.  The case was referred to Magistrate Judge Charles E. Binder (see Docket Entry 5/13/14).  The parties have filed cross motions for summary judgment (Dkts. 13, 15).  Magistrate Judge Binder issued a Report and Recommendation (R&R), recommending that Defendant's motion be granted and that Plaintiff's motion be denied (Dkt. 18).  Plaintiff has filed objections to the R&R (Dkt. 19), to which Defendant filed a response (Dkt. 20).

      The factual and procedural background of this case, along with the standard of review and legal principles governing social security appeals, have been adequately set forth by the Magistrate Judge in his R&R and need not be repeated in full here.  Plaintiff, who was born on

September 11, 1955, has previously worked as a mechanic, foreman, and landscaper. Administrative Record ("A.R.") at 96, 111 (Dkt. 11).  Plaintiff asserts that the conditions limiting his ability to work include Crohn's disease, diverticulitis, fatigue, hepatitis C with portal fibrosis, leukocytosis, hearing loss, tinnitus, knee arthraogia, joint effusion, weakness and numbness in his right arm, chronic obstructive pulmonary disease, and tobacco use disorder (in remission). Id. at 29, 48-49, 109.  On June 29, 2012, Administrative Law Judge (ALJ) Melody Paige issued her decision that Plaintiff was not disabled from November 15, 2010, through the date of the decision.  Id. at 11.  Plaintiff requested a review of this decision, id. at 5-6, and the Appeals Council denied this request.  Id. at 1.  At that point, the ALJ's decision became the final decision of the Commissioner.  Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 543-544 (6th Cir. 2004).

The ALJ based her decision on an application of the Commissioner's five-step sequential disability analysis to Plaintiff's claim.[1]  The ALJ's findings were as follows:

- Under Step One, Plaintiff met the insured status requirements through December 31, 2015, and Plaintiff had not engaged in any substantial gainful activity since November 15, 2010.  A.R. at 13.

- Under Step Two, Plaintiff had the following medically determinable impairments: history of Crohn's disease; history of diverticulitis; history of hepatitis C; chronic obstructive pulmonary disease; bilateral sensorineural hearing loss; partial hearing loss with subjective tinnitus; history of trauma to the right elbow and removal of bone chips; small marginal bone spurs and small joint effusion; osteoarthritis of right and left knee joints; leukocytosis; tobacco use disorder, in remission; and chronic substance abuse in partial remission.  Id. at 13.  However, Plaintiff did not have any severe impairment or combination of impairments, because he had no impairment or combination of impairments that has significantly limited, or is expected to significantly limit, the ability to perform "basic work-related activities" for twelve consecutive months.  Id.

---

[1] "Disability" is defined as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The ALJ's decision and the R&R adequately set forth the applicable five-step analysis.  A.R. at 11-13; R&R at 5.  See also 20 C.F.R. § 416.920(a) (explaining the five-step sequential evaluation process).

Therefore, at Step Two, the ALJ determined that Plaintiff was not disabled. Id. at 13, 19.

Plaintiff filed a complaint in this Court to contest the ALJ's decision (Dkt. 1). Magistrate Judge Binder issued his R&R recommending that Plaintiff's summary judgment motion be denied, and Defendant's summary judgment be granted, on the ground that Defendant's determination that Plaintiff's impairments were not severe was supported by substantial evidence (Dkt. 18). For the reasons that follow, the Court will accept the recommendation contained in the R&R, overrule Plaintiff's objections to the R&R, deny Plaintiff's motion for summary judgment, and grant Defendant's motion for summary judgment.

## II.    STANDARD OF REVIEW

The Court reviews de novo those portions of the R&R to which a specific objection has been made. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Under 42 U.S.C. § 405(g), this Court's review is limited to determining whether the Commissioner's decision "is supported by substantial evidence and was made pursuant to proper legal standards." Ealy v. Comm'r of Soc. Sec., 594 F.3d 504, 512 (6th Cir. 2010) (citation and quotation marks omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Lindsley v. Comm'r of Soc. Sec., 560 F.3d 601, 604 (6th Cir. 2009) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). In determining whether substantial evidence exists, the Court may "look to any evidence in the record, regardless of whether it has been cited by [the ALJ]." Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 535 (6th Cir. 2001). "[T]he claimant bears the burden of producing sufficient evidence to show the existence of a disability." Watters v. Comm'r of Soc. Sec., 530 F. App'x 419, 425 (6th Cir. 2013) (citations omitted).

## III.    ANALYSIS

Plaintiff raises objections to the following claimed errors in the R&R: (i) the finding that

Plaintiff's medical conditions of bilateral hearing loss, right ulnar nerve neuropathy, chronic obstructive pulmonary disease ("COPD"), and Crohn's disease were non-severe impairments, Obj. at 2-6 (Dkt. 19); and (ii) the amount of weight given to the consultative examiner's opinion. Id. at 6-7. The Court will address each objection in turn and, for the reasons that follow, will overrule each objection.

### A. Objection One

Plaintiff argues that the ALJ erred in determining that his medical conditions of bilateral hearing loss, right ulnar nerve neuropathy, COPD, and Crohn's disease were non-severe impairments. Obj. at 2-6. Defendant responds that substantial evidence supports the ALJ's findings regarding the lack of severity of Plaintiff's impairments. Resp. at 3-4.

The ALJ concluded that none of Plaintiff's medically determinable impairments were severe. A.R. at 13. The ALJ summarized Plaintiff's testimony regarding his symptoms and treatment, and concluded that Plaintiff's medically determinable impairments could reasonably be expected to produce the claimed symptoms, but that Plaintiff's statements regarding his symptoms were not credible to the extent they were inconsistent with the ALJ's finding that the impairments were not severe. Id. at 14-16. The ALJ noted that Plaintiff's self-reported activities and Dr. Banjeri's report indicated Plaintiff lacked functional limitations, and that there were no treating medical sources establishing functional limitations. Id. at 16. The ALJ concluded that although Plaintiff "may be developing a disabling condition," there was no evidence the condition was expected to last twelve months or more. Id. In her decision, the ALJ discussed medical record evidence regarding Plaintiff's Crohn's disease, COPD, diverticulitis, hepatitis, hearing loss, knee joint effusion and osteoarthritis, right ulnar neuropathy at the right elbow, and history of substance abuse. Id. at 17-18. The R&R concluded that substantial evidence

4

supported the ALJ's conclusion that the impairments were not severe, because the medical record indicates Plaintiff had no functional limitations; in particular, there was a lack of objective clinical findings in the record since the date of disability.  R&R at 6-8.

In light of these positions, the Court turns to governing law.  Under Step Two of the sequential analysis, an impairment or combination of impairments is not severe if it "does not significantly limit [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1521(a).[2]  In assessing a claimant's impairments, the ALJ must consider the "combined effect of all of [the claimant's] impairments."  Gentry v. Comm'r of Soc. Sec., 741 F.3d 708, 726 (6th Cir. 2014) (quoting 20 C.F.R. § 404.1523).

The Step Two severity regulation is a "de minimis hurdle in the disability determination process."  Higgs v. Bowen, 880 F.2d 860, 862 (6th Cir. 1988) (citations omitted).  The Sixth Circuit has explained:

> [A]n impairment can be considered as not severe, and the application rejected at the second stage of the sequential evaluation process, only if the impairment is a 'slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience.'

---

[2] Basic work activities include:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

(2) Capacities for seeing, hearing, and speaking;

(3) Understanding, carrying out, and remembering simple instructions;

(4) Use of judgment;

(5) Responding appropriately to supervision, co-workers and usual work situations; and

(6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b).

Farris v. Sec'y of Health & Hum. Servs., 773 F.2d 85, 90 (6th Cir. 1985) (citation omitted). Although "in the vast majority of cases a disability claim may not be dismissed without consideration of the claimant's individual vocational situation . . . ., the severity requirement may still be employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint."  Higgs, 880 F.2d at 862-863 (citations omitted). "[I]n proper cases the evaluation of disability may terminate at step two upon a finding that the impairments are not severe."  Williamson v. Sec'y of Health & Hum. Servs., 796 F.2d 146, 150 (6th Cir. 1986); see also 20 C.F.R. 404.1520(a)(4)(ii) ("If [the claimant] do[es] not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . , or a combination of impairments that is severe and meets the duration requirement, [the Commissioner] will find that you are not disabled.").

The Court addresses each of Plaintiff's claimed medical impairments as to which Plaintiff raised objections: bilateral hearing loss with subjective tinnitus; right ulnar nerve neuropathy; COPD; Crohn's disease; diverticulitis; and chronic hepatitis.  As explained in more detail below, the record makes clear that Plaintiff has been diagnosed with each of these conditions. However, a mere diagnosis, without more, does not indicate the severity of the condition.  See Higgs, 880 F.2d at 863 ("The mere diagnosis of arthritis, of course, says nothing about the severity of the condition." (citation omitted)).   Under Social Security Ruling 96-3p, "The evaluation of whether an impairment(s) is 'severe' . . . requires an assessment of the functionally limiting effects of an impairment(s) on an individual's ability to do basic work activities . . . ." Therefore, in determining whether substantial evidence supported the ALJ's determination that Plaintiff's hearing loss was not severe, the Court must consider medical record evidence as to any functional limiting effects of the medical impairments since the claimed disability.  For the

reasons that follow, the Court concludes that substantial evidence supports the ALJ's conclusions that none of Plaintiff's medical impairments caused significant limitations on his ability to work, and, therefore, that none of his impairments was severe as of the claimed commencement of disability.

### 1.  Hearing loss

Plaintiff contends that his significant hearing loss was diagnosed by his treating physician and supported by objective testing performed three months prior to his onset date.  Obj. at 2-3. He argues that his treating physician noted that Plaintiff has a difficult time wearing hearing aids. Id. at 2-3.  Plaintiff contends that because sensorineural hearing loss does not improve, it is "safe to assume" he continues to have hearing loss, and that such hearing loss affects the ability to perform competitive work.  Id. at 3.  Defendant responds that the consultative examiner determined Plaintiff could hear well and only had hearing difficulty when he experienced tinnitus.  Resp. at 2.  Defendant asserts that the medical evidence demonstrates Plaintiff had good speech recognition in his right ear and excellent speech recognition in his left ear, and that Plaintiff declined to wear hearing aids, which would have treated his condition.  Id. at 2-3.

As an initial matter, objective medical evidence supports Plaintiff's asserted hearing loss and tinnitus.  As of June 15, 2010, Plaintiff's treating physicians at the Veteran's Administration Medical Center diagnosed him with bilateral sensorineural hearing loss and subjective tinnitus. A.R. 170.  An audiological diagnostic test conducted on June 14, 2010 indicated moderate sloping to a profound sensorineural hearing loss in his right ear, and mild sloping to a profound sensorineural hearing loss in his left ear.  Id. at 234.

However, the medical record further indicates a lack of functional limiting effects of Plaintiff's hearing loss.  The audiological test revealed good speech recognition scores in his

right ear and excellent speech recognition scores in his left ear.  Id. at 235.    The consultative examiner ("C.E."), Dr. Banjeri, reported on August 25, 2011 that, in his opinion, Plaintiff could hear well, although his hearing was sometimes impaired by tinnitus; the C.E. noted that Plaintiff could "manage conversation fairly well with minimal difficulty."  Id. at 266-267.  Plaintiff's self-reported limitations also show a lack of consistent functional limitation stemming from his hearing loss.  On April 26, 2011, Plaintiff reported to his treating doctor that he "sometime[] can not hear what others are saying."  Id. at 190 (emphasis added).  Further, at the hearing before the ALJ, conducted on April 23, 2012, the transcript indicates that although the ALJ repeated several questions on Plaintiff's request, Plaintiff was able to generally respond to questions.  Id. at 25-57.

Moreover, Plaintiff has consistently declined to wear hearing aids.  Plaintiff informed his treating doctor in June 2010 that he is not interested in wearing hearing aids.  A.R. at 235.  At the hearing before the ALJ, Plaintiff testified that he had problems with hearing aids due to the ringing in his ears, that he "could not wear them," but that his treating doctors wanted him to get refitted for hearing aids and he was "pursuing" new hearing aid technology that his audiologist discussed with him.  Id. at 38-39.  Although Plaintiff asserts in his brief that his treating physician opined that Plaintiff has a hard time wearing his hearing aids, the physician's report to which Plaintiff cites simply repeats Plaintiff's statement that he "does not like wearing [hearing aids]" because they pick up too much background noise.  A.R. 234.  A medical report that merely repeats a claimant's subjective complaints is not objective medical evidence.  See Young v. Sec'y of Health & Hum. Servs., 925 F.2d 146, 151 (6th Cir. 1990) (concluding that a medical report which was based on the claimant's subjective assertions of pain and inability to function was not objective medical evidence).  Therefore, this report is not objective evidence of any

8

medical conclusion that Plaintiff is unable to wear hearing aids; what is more, there is evidence in the record that Plaintiff's treating physicians have repeatedly discussed with him the option of hearing aids.  A.R. at 234-235; 38-39.

For these reasons, Plaintiff has pointed to no objective medical evidence of his claimed inability to wear hearing aids.  Although his refusal to wear hearing aids is not dispositive, see Hester v. Sec'y of Health & Hum. Servs., 886 F.2d 1315 (Table), at *3 (6th Cir. Oct. 4, 1989) ("Failure to follow prescribed treatment becomes a determinative issue only if the claimant's impairment is found to be disabling under steps one through five and is amendable to treatment expected to restore ability to work." (citations omitted)), it is nevertheless supportive of the conclusion that Plaintiff's hearing loss is not a severe impairment.

Because the medical record contains substantial evidence that Plaintiff's hearing loss did not cause functional limitations that significantly limited Plaintiff's ability to do basic work activities, the ALJ's determination that Plaintiff's hearing loss was not a severe impairment is supported by substantial evidence.[3]

### 2.  Right ulnar neuropathy

Plaintiff asserts that he has a lesion on his ulnar nerve, causing severe right ulnar neuropathy at his elbow, and that his right arm is deformed, with a large lump on the elbow. Obj. at 3.  Plaintiff argues that his ulnar neuropathy and ulnar palsy caused Plaintiff to stop working, and that the R&R erred in not mentioning this impairment "despite the fact that Plaintiff's right arm is his dominant arm."  Id. at 4.

Objective medical evidence supports the existence of these asserted conditions.  On April

---

[3] The Court notes that although Plaintiff argues in his brief that sensorineural hearing loss does not improve, and that it is "safe to assume" that Plaintiff continues to have profound hearing loss, Plaintiff does not cite any record evidence in support of this assertion.  Regardless, as the Court concludes above, there is substantial evidence that supports the ALJ's conclusion that Plaintiff's hearing loss is not a severe impairment.

19, 2011, Plaintiff's treating physician concluded, based on electrodiagnostic findings, that Plaintiff had severe right ulnar nerve entrapment at the elbow and partial right median nerve neuropathy in the forearm.  A.R. at 192.  On April 26, 2011, Plaintiff's treating physician reported that Plaintiff had a lesion of the ulnar nerve and right ulnar palsy of the elbow; Plaintiff had a decreased pinprick on the ulnar side of the forearm and a positive Tinel's sign at the right elbow.  Id. at 171, 188-189.  The physician indicated that an elbow pad would be ordered for Plaintiff, and Plaintiff would be referred for consideration of an ulnar transposition.  Id. at 189. Plaintiff was examined again on August 10, 2011, and the physician reported ulnar palsy at the right elbow with structural disease in the right elbow joint.  Id. at 282. Plaintiff reported pain, numbness, and tingling in his right forearm.  Id. at 186.

Although medical evidence supports the diagnosis of right ulnar neuropathy and history of right arm trauma, substantial evidence supports the ALJ's conclusion that this impairment was not severe.  The C.E., Dr. Banjeri, reported that Plaintiff has pain but no limitation of movement in the right elbow joint and that his grip is good in both hands.  Id. at 265-266.  Dr. Banjeri concluded that Plaintiff had no functional orthopedic limitation due to his right elbow, and that Plaintiff could lift sixty pounds from the floor and carry it for about fifty feet.  Id. at 266-267. Further, although Plaintiff testified that he had "severe strength loss" in his right hand, id. at 48, on April 26, 2011, Plaintiff's treating physician reported that Plaintiff had a strength of four out of five in the right extremities and five out of five elsewhere.  Id. at 188.  Further, the fact that Plaintiff is left-handed provides some support for the conclusion that Plaintiff's right ulnar neuropathy does not necessarily impose significant limitations on his ability to work.[4]

---

[4] The Court notes that there seems to be some confusion in the briefing and the ALJ's decision as to whether Plaintiff is right-handed or left-handed.  The ALJ noted that Plaintiff is left-hand dominant, but on the same page indicated that Plaintiff left arm was non-dominant.  A.R. at 15. In Plaintiff's objections, he asserts that his right arm is his dominant arm.  Obj. at 4.  However,

Finally, Plaintiff has not pointed to objective medical evidence in the record regarding functional limitations of this condition, or, in particular, objective medical evidence supporting the conclusion that any functional limitations resulting from this condition significantly limited his ability to work.   For these reasons, the ALJ's determination that Plaintiff's right ulnar neuropathy was not a severe condition is supported by substantial evidence.

### 3.   COPD

Plaintiff asserts that he has been diagnosed with moderate COPD, with a moderate obstructive ventilator defect with moderate diffuse capacity.  Obj. at 4.  Plaintiff argues that the R&R erred in concluding that his COPD was stable and therefore not severe, because medically stable just means that a condition is unchanging.   Id. at 4-5.   Plaintiff contends that the propensity to become short of breath upon minimal exertion affects the ability to perform competitive work.  Id. at 5.

Objective medical evidence establishes Plaintiff's history of COPD.  In November 2007, Plaintiff's treating physician noted that he had prominent interstitial lung markings with vague interstitial lung disease.  A.R. at 182.  As of February 2011, Plaintiff was diagnosed with moderate COPD, with some symptoms daily in the morning, and moderate obstructive ventilator defect; there were no definite pulmonary nodules identified.  Id. at 206, 252.  In March 2011, Plaintiff's COPD was stable on medication.  Id. at 198.

Although there is objective medical evidence supporting Plaintiff's diagnosis of COPD, substantial evidence supports the ALJ's conclusion that there was a lack of functional limitations arising from this condition.  Plaintiff's treating physician noted that there is no limitation on his exercise capacity due to his COPD.  Id. at 206.  Dr. Banjeri opined that Plaintiff's COPD was

---

the record clearly indicates that Plaintiff is left-handed.  Id. at 266; see also id. at 35-36 ("Being left handed, my left arm is stronger than my right arm.").

well-controlled with his present regimen, id. at 267, and this opinion is supported by the treating physician's notes that the COPD was "stable on meds." Id. at 198. It is established that the improvement of a condition with medication and treatment undercuts the claimed severity of the impairment. Torres v. Comm'r of Soc. Sec., 490 F. App'x 748, 754 (6th Cir. 2012). Although Plaintiff argues that the stability of his COPD, in and of itself, is insufficient to support a finding of non-severity, obj. at 4-5, Plaintiff does not point to objective medical evidence in the record regarding any functional limitations stemming from this condition. Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's COPD does not significantly limit his ability to work.

### 4. Crohn's disease, diverticulitis, and hepatitis

Plaintiff asserts that he has been diagnosed with Crohn's disease that was symptomatic as of June 2010, diverticular disease, and chronic hepatitis that was active with portal fibrosis as of March 2010. Obj. at 5. Plaintiff contends that the R&R erred in relying on the consultative examiner's report in finding Plaintiff's Crohn's disease and other abdominal impairments non-severe, because there is no indication the consultative examiner actually examined Plaintiff's abdomen. Id. at 5-6.

Objective medical evidence indicates that Plaintiff has a history of these asserted conditions. Plaintiff has been diagnosed with Crohn's disease, regional enteritis, and diverticular disease. A.R. at 172, 183. In March 2010, Plaintiff was diagnosed with mildly active chronic hepatitis C with portal fibrosis. Id. at 258. A treating physician note from June 2010 stated that Plaintiff's Crohn's disease was symptomatic with "endoscopic remission," but then stated that Plaintiff was asymptomatic with no need for medications. Id. at 239. A medical record dated October 25, 2011 stated that Plaintiff had been told he had Crohn's disease, but that he had been

12

on "no medications for IBD for the last 5 years." Id. at 288. Plaintiff had been treated "at some point" with interferon for hepatitis, but Plaintiff could not tolerate that treatment. Id. As of October 2011, Plaintiff's Crohn's disease was asymptomatic with no need for treatment as there was "no evidence of active ongoing disease." Id. at 290. Further, Dr. Banjeri opined that there was no evidence of hepatitis and no abnormal physical findings related to Crohn's disease; he concluded that these conditions appeared to be well-controlled. Id. at 267.[5]

Although there is objective medical record evidence supporting Plaintiff's history of these conditions, substantial evidence supports the ALJ's conclusion that these conditions were not severe. Both the treating physicians and Dr. Banjeri indicated that these conditions were asymptomatic as of 2011. It is true that Plaintiff's treating doctor noted that Plaintiff reported a Crohn's flare-up and fatigue from hepatitis C as of February 2012, and that Plaintiff reported flare-ups of Crohn's disease and diarrhea at the hearing before the ALJ. Id. at 296, 44. However, there is a lack of objective medical evidence indicating that these conditions significantly impaired Plaintiff's ability to work as of the claimed disability date – November 15, 2010 – or that these conditions would be expected to last for twelve months or more. For these reasons, the ALJ's conclusion that these conditions were not severe was supported by substantial evidence.

### 5. Combination of impairments

In assessing the severity of impairments, the ALJ must consider the combined effect of Plaintiff's impairments. See Gentry, 741 F.3d at 726. Plaintiff argues that the ALJ erred in not

---

[5] Plaintiff argues that there is no indication Dr. Banjeri even examined Plaintiff's abdomen. Obj. at 5-6. However, Dr. Banjeri's report indicates that he did conduct an examination of Plaintiff's abdomen; his report states, "No abnormal physical finding detected in the abdomen during this examination related to this problem." A.R. at 267. Dr. Banjeri also reported that Plaintiff's abdomen was soft, with no tenderness and normal bowel sounds, which indicates that he did perform an examination of the abdomen. Id. at 266.

considering all of his symptoms.  Obj. at 6.

Having reviewed the medical evidence and Plaintiff's self-reported activities, the Court concludes that substantial evidence supports the ALJ's conclusion that "[a]lthough [Plaintiff] may be developing a disabling condition, it is recent in nature.  There is no evidence that the claimant's condition is expected to last 12 months or more."  A.R. at 16.  In her decision, the ALJ thoroughly summarized Plaintiff's testimony but concluded that his self-reported limitations were not credible to the extent they were inconsistent with the ALJ's finding that Plaintiff had no severe impairment or combination of impairments.  Id. at 14-16.

Plaintiff testified that he can climb stairs, although he may be out of breath when he reaches the top; he drives; he makes the bed; he takes out the trash; he takes care of his personal grooming; he sometimes, cooks, does dishes, and sweeps; he goes out once per week; he states that he can lift twenty or twenty-five pounds with his left arm and could carry a gallon of milk, using both hands, eight or ten feet; he can walk a block, stand for ten or fifteen minutes, and sit for ten or fifteen minutes; he can bend down; he can raise his arms over his head; and he can pick up a dime with his fingers.  Id. at 30-40.  Plaintiff watches his granddaughter and prepares some meals for her, and he feeds and waters two cats and one dog.  Id. at 136.  He is able to clean the house, vacuum, do laundry, mow the grass, and do repairs, although he stated he has not vacuumed "in quite some time."  Id. at 33, 137.  Plaintiff collected unemployment benefits after he left work in November 2010.  Id. at 35.  Plaintiff's ability to engage in a wide variety of daily activities, his self-reported physical abilities, and his applications for unemployment benefits undercuts the claimed severity of his impairments.  See, e.g., Justice v. Comm'r Soc. Sec. Admin., 515 F. App'x 583, 587 (6th Cir. 2013) (concluding that where the claimant was able to "adequately manage normal activities of daily living," and because the claimant "received

unemployment benefits . . . which are conditioned on the unemployed beneficiary's being able and willing to work," substantial evidence supported finding a less severe condition than that asserted by the claimant).

Furthermore, Plaintiff has pointed to no treating physician opinion discussing functional limitations of his conditions. Although it appears that no treating physician gave a medical judgment as to this subject, the C.E., Dr. Banjeri, opined that based on his physical examination of Plaintiff and his review of Plaintiff's medical records, Plaintiff was "suitable for work eight hours a day but should avoid climbing ladders and scaffolding due to a history of pain in the elbow joint." A.R. at 267.

Finally, the Court notes that Plaintiff testified that he quit work due to his fatigue and to self-diagnosed "insecticide poisoning." Id. at 29. Plaintiff's treating physician also reported that Plaintiff indicated he stopped working due to Crohn's, impaired hearing, and hand numbness. Id. at 284. Although these self-reported reasons for ending work constitute some evidence supporting the severity of the combined effect of Plaintiff's impairments, there is nevertheless substantial evidence in the record supporting the ALJ's determination of non-severity. See Casey v. Sec'y of Health & Hum. Servs., 987 F.2d 1230, 1233 (6th Cir. 1993) ("Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." (citation omitted)). In particular, Plaintiff's self-reported activities, Dr. Banjeri's opinion, and the lack of treating physician opinions as to functional limitations constitute substantial evidence supporting the ALJ's finding of non-severity. Because Plaintiff has not met his burden of producing evidence demonstrating the severity of his impairments, see Watters, 530 F. App'x at 425, the Court overrules Plaintiff's first objection.

15

### B.  Objection Two

In his second objection, Plaintiff argues that the Magistrate Judge gave inappropriate weight to the opinion of Dr. Banjeri, the consultative examiner.  Obj. at 6.  He argues that the R&R relies entirely on Dr. Banjeri's opinion, without referencing the medical records from Plaintiff's treating physicians.  Id.  Plaintiff further contends that Dr. Banjeri's opinion is contradicted by Plaintiff's record from his treating sources, in the following ways: (i) Dr. Banjeri's conclusion that Plaintiff can hear well contradicts the audiological testing demonstrating hearing loss and the opinion of Plaintiff's treating physician that Plaintiff cannot wear hearing aids; (ii) Dr. Banjeri's statement that Plaintiff has no functional limitations of the right elbow contradicts Plaintiff's diagnosis of severe right ulnar neuropathy, with a positive Tinel's sign and a decreased pinprick; and (iii) Dr. Banjeri's reference to Plaintiff's "alleged" hepatitis C was contradicted by Plaintiff's diagnosis of hepatitis C.  Id. at 6-7.

Defendant responds that the issue is not whether the Magistrate Judge gave proper weight to Dr. Banjeri's opinion, but rather whether the ALJ properly weighed the opinion evidence. Resp. at 3.  Defendant further argues that the ALJ properly considered the medical opinions of record and explained the weight assigned to them.  Id.

The ALJ assigned "significant weight" to Dr. Banjeri's opinion on the ground that Dr. Banjeri's opinion was not contradicted by any treating medical sources, and was supported by Plaintiff's testimony.  A.R. at 16.  The ALJ explained that the lack of severity of Plaintiff's impairments was supported by "the lack of functional limitations when examined by Dr. Banjeri together with the claimant's testimony as to his physical and mental capabilities and the lack of supporting treating medical establishing any functional limitations."  Id.  The ALJ referenced Plaintiff's treating source diagnoses and tests for diverticular disease, COPD, history of Crohn's

16

disease, mildly active hepatitis, profound sensorineural hearing loss, and severe right ulnar neuropathy.  Id. at 17-18.  The R&R, in recommending an affirmance of the ALJ's decision, relied on Dr. Banjeri's opinions as to Plaintiff's lack of functional limitations, as well as Plaintiff's testimony and treating source records regarding stability of some of Plaintiff's conditions.  R&R at 6-8.

It is established that ALJs are bound by the "treating physician rule," which provides for the amount of deference a decision-maker must give to the opinions of the claimant's treating physician.  Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 406 (6th Cir.2009). The treating source's opinion must be given "controlling weight" if the treating source opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(c)(2).  If the ALJ does not give the treating physician's opinion controlling weight, the ALJ must (i) determine how much weight to assign to the treating source opinion, and (ii) support its determination of how much weight to give with "good reasons."  See Friend v. Comm'r of Soc. Sec., 375 F. App'x 543, 550 (6th Cir. 2010); Smith v. Comm'r of Soc. Sec., 482 F.3d 873, 875 (6th Cir. 2007).  For non-treating sources, the ALJ must "weigh[] these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling."  Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 376 (6th Cir. 2013) (citations omitted).

The Court overrules Plaintiff's second objection, for two reasons: (i) the ALJ did credit, and adopt, the treating source records as to the diagnoses and nature of Plaintiff's conditions; and (ii) due to the lack of any treating source opinions as to Plaintiff's functional limitations, the ALJ

was entitled to give significant weight to the opinion of the consultative examiner.[6]

As an initial matter, contrary to Plaintiff's assertions, the ALJ did credit the treating source medical records over Dr. Banjeri's opinion in finding that Plaintiff had various medically determinable impairments.  First, the ALJ concluded that Plaintiff has bilateral sensorineural hearing loss.  A.R. at 13.  This aligns with the diagnosis of profound sensorineural hearing loss in the treating physician medical records and contradicts Dr. Banjeri's conclusion that Plaintiff had only "alleged" hearing loss.  Id. at 234.  Second, the ALJ referenced Plaintiff's diagnosis of severe right ulnar nerve entrapment in his treating physician records and concluded that Plaintiff has a history of trauma to the right elbow with removal of bone chips.  Id. at 13, 18.  Third, the ALJ concluded that Plaintiff had a history of hepatitis C; this comports with Plaintiff's treating source records of a diagnosis of hepatitis C after a liver biopsy and contradicts Dr. Banjeri's conclusion that Plaintiff had only an "alleged" history of hepatitis C.  Id. at 13, 17.  Upon a review of the ALJ's decision and Plaintiff's medical records, it is clear that the ALJ did adopt the conclusions of the treating source records when they contradicted with Dr. Banjeri's opinion.[7]

---

[6] The Court notes that, as Defendant points out, the issue is whether the ALJ, not the Magistrate Judge, properly applied the treating physician rule.  Regardless, the Court concludes that Plaintiff's second objection is sufficient to raise the issue of application of the treating-source rule, and the weight given to the consultative examiner, to the ALJ's decision.

[7] Although Plaintiff did not raise this issue in his objections, it is arguable that the ALJ should have more clearly explained the amount of weight given to the treating source records, and should have more directly indicated that where the treating source records contradicted Dr. Banjeri's opinion, the ALJ credited the treating source records.  See, e.g., 20 C.F.R. 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.").  However, even if this constituted error, it was harmless error.  Failure to comply with the treating source requirement "may be deemed harmless error if . . . the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion . . . ."  Watters, 530 F. App'x at 423 (citation omitted). Here, as explained above, the ALJ did make findings of medically determinable impairments consistent with the diagnoses and medical test results in the treating source records.

Furthermore, the ALJ explained that due, in part, to the lack of any treating medical sources providing opinions as to Plaintiff's functional limitations, the ALJ assigned "significant weight" to Dr. Banjeri's opinion.  A.R. at 16.  The Court has reviewed the record and agrees that Plaintiff's treating physicians did not provide opinions as to functional limitations arising from his conditions.  Although Plaintiff argues that his treating doctors diagnosed him with hearing loss, right ulnar neuropathy, and hepatitis C, a diagnosis, without more, is insufficient to make a finding as to the severity of a condition.  See Higgs, 880 F.2d at 863.  An assessment of severity requires a finding as to the functional limitations resulting from an impairment.  See SSR 96-3p.  Because the record contains no treating source opinions addressing Plaintiff's functional limitations, the ALJ was not required to apply the "good reasons" rule to explain the lack of weight given to the treating physician records as to this subject.  See Mitchell v. Comm'r of Soc. Sec., 330 F. App'x 563, 569 (6th Cir. 2009) ("[B]efore the ALJ must apply the good reasons rule, there must be a genuine assertion by the treating physician of an opinion involving the claimant's symptoms, diagnosis, and prognosis." (citation and quotation marks omitted)).[8]  Further, the ALJ properly afforded significant weight to the only available medical opinion regarding Plaintiff's functional limitations – that of the consultative examiner.  Gayheart, 710

---

[8] Although Plaintiff argues that his treating doctor opined that he cannot wear hearing aids, this argument lacks merit.  In the medical record to which Plaintiff cites for this point, the doctor noted that Plaintiff "stated that he does not like wearing [hearing aids]."  A.R. at 234.  However, the doctor made no medical judgment that Plaintiff was unable to wear hearing aids.  Indeed, as discussed supra pp. 9-10, the medical record indicates that Plaintiff's physicians raised the possibility of hearing aids with him multiple times.  Because the treating physician was merely repeating statements Plaintiff made to him regarding hearing aids, the ALJ was not required to give this statement controlling weight.  See Bass v. McMahon, 499 F.3d 506, 510 (6th Cir. 2007) (concluding that where the treating physician gave no medical judgment as to the claimant's ability to ambulate, but instead simply repeated the claimant's allegations, "the ALJ had no duty to give such observations controlling weight or provide good reasons for not doing so").

F.3d at 376 (explaining that when a treating physician's opinion is not deemed controlling, the ALJ must weigh opinions of non-treating medical examiners based on a number of factors).

The ALJ was not required to delineate every factor listed in 20 C.F.R. § 404.1527 in determining the appropriate amount of weight to give to the opinion of Dr. Banjeri. See, e.g., Klimas v. Comm'r of Soc. Sec., No. 1:10-cv-666, 2012 WL 691702, at *1 (W.D. Mich. Mar. 1, 2012) (noting that "an ALJ is not required to discuss each of these factors [set forth in the regulations]"). The ALJ sufficiently explained that she assigned significant weight to Dr. Banjeri's opinion based on the "lack of supporting treating medical establishing any functional limitations" and the fact that Dr. Banjeri's opinion was supported by Plaintiff's self-reported activities.

For these reasons, the Court overrules Plaintiff's second objection.

## IV. CONCLUSION

For the reasons stated above, the Court accepts the recommendation contained in the R&R, overrules Plaintiff's objections to the R&R, denies Plaintiff's motion for summary judgment, and grants Defendant's motion for summary judgment.[9]

---

[9] In addition to the medical conditions referenced by Plaintiff in his objections, the ALJ concluded that Plaintiff had various other medically determinable impairments, including osteoarthritis of the knee joints, tobacco use disorder (in remission), and mental impairments. A.R. at 13, 18-19. The ALJ further concluded that none of these impairments was severe. Id. However, Plaintiff does not raise specific objections regarding these medical impairments. Nor does Plaintiff object to the ALJ's credibility determination. Therefore, the Court need not conduct a de novo review of the R&R's discussion of these issues or reach whether the ALJ's determination of these issues was supported by substantial evidence. See Fed. R. Civ. P. 72(b)(3); Smith v. Detroit Fed'n of Teachers Local 231, Am. Fed'n of Teachers, AFL-CIO, 829 F.2d 1370, 1373 (6th Cir. 1987) ("[M]aking some objections but failing to raise others will not preserve all the objections a party may have."). Regardless, the Court has reviewed the remaining portions of the R&R for clear error, has found no such clear error, and accepts the recommendation contained in these parts of the R&R.

SO ORDERED.

Dated:  July 24, 2014                                    s/Mark A. Goldsmith
           Flint, Michigan                                 MARK A. GOLDSMITH
                                                                 United States District Judge

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 24, 2014.

                                                                 s/Deborah J. Goltz
                                                                 DEBORAH J. GOLTZ
                                                                 Case Manager